ACME MESSENGER SERVICE CO. *v.* UNEMPLOYMENT COMPENSATION COMMISSION.

1. STATUTES—CONSTRUCTION—INTENT.

In construing the provisions of a statute the court does not consider the wisdom or the policy of the legislature in the enactment but applies fundamental rules of statutory construction in order to determine the legislative intent and if the language of the statute is plain and unambiguous no interpretation is necessary.

2. UNEMPLOYMENT COMPENSATION—CONSTRUCTION OF STATUTES—TEST OF EMPLOYMENT—MESSENGER SERVICE COMPANY.

In determining whether truck drivers and messengers who make deliveries for messenger service company are in the "employment" of the latter within the meaning of the unemployment compensation act, neither the common-law rules as to relation of master and servant, the "independent contractor" rule as applied in workmen's compensation cases nor the licensing of carriers of passengers or goods for hire will be considered to provide the controlling test where the act itself provides

a definite test, although such other tests might be resorted to in case the act were uncertain or ambiguous in such particular (Act No. 1, § 42, subds. 1, 6 [a, b, c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub. Acts 1939).

3. Same—Test of Employment.

Under the unemployment compensation act where service is performed for remuneration, there is an employment unless it is shown that the individual performing the service is free from control or direction over the performance of the service both under the contract and in fact, that the service is either outside the usual course of business for which the service is performed or is performed outside of all the places of business of the enterprise for which performed and that the individual is customarily engaged in an independently established trade, occupation, profession or business (Act No. 1, § 42, subd. 6 [a, b, c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub. Acts 1939).

4. Same—Messenger Service.

Truck drivers and messengers who performed service for plaintiff were in its "employment," as that term is used in the unemployment compensation act, where they worked directly under the president and general manager of the messenger service company, await their turn to make a delivery which is a part of plaintiff's principal business and which must be made with dispatch, some of the services are performed on plaintiff's premises and the individuals performing the service are not customarily engaged in an independently established occupation or business and at least part of the remuneration received is for personal service (Act No. 1, § 42, subd. 6 [a, b, c], § 44, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub. Acts 1939).

5. Costs—Public Question—Construction of Statutes.

No costs are awarded in action involving construction of the unemployment compensation act, a public question being involved (Act No. 1, § 42, subds. 1, 6 [a, b, c], § 44, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub. Acts 1939).

Appeal from Wayne; Brennan (Vincent M.), J. Submitted June 9, 1943. (Docket No. 27, Calendar No. 42,222.) Decided October 11, 1943.

Certiorari by Acme Messenger Service Company, a Michigan corporation, to review a decision of the

appeal board of the Michigan Unemployment Compensation Commission determining that certain individuals were employees of plaintiff. Judgment for plaintiff. Defendant appeals. Reversed.

*Allen H. Blondy* and *John P. Murphy* (*Joseph J. Geraci,* of counsel), for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Florence N. Clement,* Assistant Attorney General, for defendant.

BOYLES, C. J. The Michigan unemployment compensation commission appeals from a judgment entered in the Wayne county circuit court, adjudging that the plaintiff, Acme Messenger Service Company, is not to be held liable for unemployment assessments covering truck drivers and messengers who deliver messages and packages for the plaintiff.

The Acme Messenger Service Company is a Michigan corporation, with its principal place of business in Detroit. Since 1937, the company has been rendering messenger service, special delivery service and light trucking. There are about 12 individuals who make deliveries for the company. Four of these individuals work full time for the company, the others work part time depending upon the volume of business of the company. The relationship between the company and each of the men is the same, although four of the men signed a written contract and the others work under an oral arrangement. The men are compensated on a mileage and time basis, are on plaintiff's payroll, and are paid each week. Each man provides his own transportation (bicycle, automobile or light truck) and pays his own expenses of operation. Six of the

men carry liability and property damage insurance to protect the company and themselves. The insurance premium is sometimes paid by the company and funds withheld from the driver to reimburse the company.

The company does not give detailed instructions to the men aside from where to pick up the packages or messages, and where to deliver them. The only requirement is that the delivery be made with dispatch. The men are not required to attend meetings and are not supervised by a foreman, but work directly under the president (general manager) of the company. The drivers await their turn to make a delivery. If a driver's work is unsatisfactory, he is not given any more work. The company keeps a time slip for each delivery. Complaints of customers are received by the company and the manager then speaks to the driver and finds out his excuse.

The delivery of parcels and packages is the regular course of business of the company. The men receive some of the assignments in the offices of the company, and some are given out by telephone. Apparently, the messengers report back to the company upon the completion of an assignment.

None of the drivers has his own place of business, nor is there any testimony to show that any of the individuals hold themselves out to the public as engaged in the messenger or delivery service. Some of the drivers also do work for other companies. For example, two of the men work for the New York Times on Saturdays; one man has a full-time job at night and works only two or three hours a day for the Acme Messenger Service Company. One of the men also delivers messages for the Postal Telegraph Company. Several of them had been employed by other messenger companies or to de-

liver newspapers prior to their connection with the plaintiff company. They quit their former jobs when they started to work for the plaintiff.

The main question presented for decision is the meaning of the term "employment" as used in the Michigan unemployment act. The trial court applied the definition of independent contractor to the facts to ascertain the status of the services rendered by the messengers. The court construed the case of *Bert Baker, Inc.,* v. *Ryce,* 301 Mich. 84, to hold that the unemployment act did not provide a test for the determination of the employment relationship different than that used at common law. The court held that the facts adduced did not show "control" by the company over the messengers, that the men were "independent contractors," and that, therefore, they were not in "employment" for the Acme Messenger Service Company.

The commission claims that in order to determine the "employment" relationship under the unemployment act, the statutory test (Act No. 1, § 42, subds. 1, 6 [a, b, c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub. Acts 1939) must be applied, rather than the common-law test of master and servant or the "independent contractor" rule. (For subsequent amendments to the above act, see Act No. 364, Pub. Acts 1941, and Act No. 18, Pub. Acts 1942 [2d Ex. Sess.] [Stat. Ann. 1942 Cum. Supp. § 17.545]). The messenger company claims that the instant case is controlled by *Bert Baker, Inc.,* v. *Ryce, supra.* In that case, an individual who sought to claim unemployment compensation was not on the payroll of the one claimed to be his employer, and the employer had no control or direction over the services performed by the claimant. It was held that the relation between the claimant and the one in whose employment he claimed to be was

not "employment" within the meaning of the act. The facts distinguish the case from the one now before us.

In approaching the question of law involved, we do not consider the wisdom or the policy of the legislature in the enactment. *People* v. *Powell,* 280 Mich. 699 (111 A. L. R. 721). The function of the court is to apply the fundamental rules of statutory construction and thereby seek to determine the legislative intent. If the language of the statute is plain and unambiguous, no interpretation is necessary. *In re Chamberlain's Estate,* 298 Mich. 278. If the unemployment compensation law plainly determines the status of the truck drivers and messengers involved in this case, as to whether they are "employed by," or "in the employment of" the messenger company, no further research into the law is necessary. Neither the common-law rules as to the relation of master and servant, nor the "independent contractor" rules as applied to the workmen's compensation law or the licensing of carriers of passengers or goods for hire, will be considered to provide the controlling test as to whether one is "in the employment of" another, under the unemployment compensation act. The statutory provisions in the act must be held to supply the test. But in case of ambiguity or uncertainty in the statute, the court will consider that the statute was enacted in contemplation of the established common-law rules of master and servant. Nor is there any persuasive reason, if the statutory definition is uncertain or ambiguous, why the court should ignore decisions that have settled the law as to independent contractors, under statutes of like import. Does the unemployment compensation statute provide a definite test by which the court may determine whether the individuals who deliver

packages and messages for the plaintiff under the facts of this case are "in the employment" of the plaintiff within the meaning of the act? We think it does.

As applied to this case, the test as to what constitutes employment within the meaning of the act is in section 42, as amended by Act No. 324, Pub. Acts 1939. The pertinent parts are as follows:

"(1) Subject to the other provisions of this section 'employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied. * * *

"(6) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

"(a) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(b) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(c) Such individual is customarily engaged in an independently established trade, occupation, profession or business."

The truck drivers and other individuals, in this case, were performing services for the Acme Messenger Service Company. These services must be deemed "employment subject to this act," unless and until it was shown that individual drivers or messengers (each depending on his own individual situation) came within these enumerated exceptions (a), (b) and (c), set forth in subdivision 6 of section 42 of the act. In that connection, the exceptions (a), (b) and (c) in section 42 are in the

conjunctive, joined by "and," not "or." If all three of these tests or conditions are met, the exemption applies; otherwise not.

The record before us covers 121 pages, mostly formal proceedings, argument and colloquy, with about 15 pages of actual testimony as to the factual situation supposed to control decision. The testimony (given by the president of plaintiff company before a referee of the commission) indicates that four of these drivers, operating their own trucks, deliver goods and packages for plaintiff on a mileage and hour basis. One of these men reports every day for work, to pick up and deliver whatever work there is to do. Another one works for the New York Times and the Detroit Free Press, hauling and delivering papers, and appears at plaintiff's place of business daily to pick up and deliver for plaintiff. The third and fourth drivers give their entire working day to plaintiff's work, deliver only for the plaintiff, and work every day. Plaintiff has about eight others it calls for pickup and delivery or messenger services. They all work for plaintiff, perform the required services, although only part of them work full time. As a general rule, they stopped work for others when they started to work for plaintiff. One carries small packages on a bicycle, and delivers messages. The president (general manager) testified "they all more or less are regular right along, have been with (us) for some years." Plaintiff does not tell them when to come in, or when to go home. They have the right to do work for others, and if they get work elsewhere they go and do it. Some of the messenger boys occupy a room at plaintiff's place of business. The manager testified:

"*A.* The way the boys work it they have a first in and out system. All we do if we get a call over the phone and four boys sitting there we say 'Who

is next?' They decide who is next and they check up and agree to do the job. * * *

"*Q.* How close tab do you keep on their operations, promptness of delivery and how they perform?

"*A.* They keep track, how we keep tab what is done, we handle the call, a job slip with the time on it. It is my general knowledge you can come up here and back down town in 45 minutes in actual time. If he comes up here and calls from here, 'I am up at Woodward and Manchester, have you anything coming back?

"*Q.* You have occasion to criticize, some of them have done better work; have you talked with them?

"*A.* If there is a complaint on it, if there is a complaint on it from my customer, the only thing I can tell is I will see what happened with the driver. Says, 'You didn't deliver for 3 o'clock we gave to you at 10,' it is up to him to see he is certain it is delivered.

"*Q.* And the excuse he had for it?

"*A.* That's right.

"*Q.* So you do have some measure of control over them by way of prompt exercise of duties assigned to them?

"*A.* Yes, but in that sense in my own belief I say there is no difference in my subletting the work of one of my auditors."

Under this method of employment, we hold that the group is within the employment of plaintiff, and not exempt under the provisions of section 42, subdivision 6 (a), (b) and (c) of the act. Under subdivision (a), the individual's services are deemed to be employment under the act, unless the individual is "free from control or direction over the performance of such services." These individuals are not free from such direction or control. The record

shows that performance of these delivery services for plaintiff, by these individuals, is under the direction and control of plaintiff company. Furthermore, under the test provided in subdivision (b), such service is not outside the usual course of plaintiff's business—on the contrary, this messenger and delivery service is the principal, if not the sole, business of plaintiff. Nor are all of these services performed outside of plaintiff's place of business. The messenger boys occupy a room in plaintiff's establishment, subject to call. One of these men actually performs other work there, beginning at 8 or 8:30 in the morning, "works in the receiving rooms, starts and closes down." The drivers come there for instructions and work and without doubt are in plaintiff's place of business when required to explain complaints received from customers. Under the test provided in subdivision (c), the record plainly establishes that these individuals are not customarily engaged in an independently established occupation or business. Their services performed for plaintiff must be deemed to be employment subject to the act.

The only other question necessary to consider is, whether these services are "performed for remuneration." The answer is obvious. Section 44 of the act * provides that " 'remuneration' means all compensation payable for personal services." Plaintiff argues that a part of their "remuneration" is for use of trucks or bicycles. At least some part of their pay is compensation for "personal services," and, as to the majority of the messengers, all of it is apparently compensation for personal services. These men are all on plaintiff's

* Comp. Laws Supp. 1940, § 8485-84, Stat. Ann. 1940 Cum. Supp. § 17.548.—REPORTER.

payroll and receiving compensation from plaintiff, and are receiving remuneration within the meaning of the act.

Appellee seeks to add questions for decision that were not raised or considered in the lower court, and have no place in the issue now before us.

Reversed and remanded for entry of an order in accordance herewith. No costs, a public question being involved.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSH-NELL, and SHARPE, JJ., concurred.