EMPLOYMENT SECURITY COMMISSION v. CRANE.

1. PARTNERSHIP—DISTINCT LEGAL ENTITY.

A partnership is a distinct legal entity separate from the individuals composing it and its essential elements are their contribution to it of whatsoever nature, whether capital, skill or labor.

2. UNEMPLOYMENT COMPENSATION—CONTRIBUTION RATE OF SUCCESSOR —PARTNERSHIP—STATUTES.

The question of whether 2 partnerships owned by the same 2 individuals constituted but 1 employing unit is to be determined by the provisions of the employment security act in proceeding for determination of contribution rate of successor of one of the partnerships (CL 1948, § 421.1 et seq.).

3. SAME—PARTNERSHIP—EMPLOYING UNIT.

The employment security act does not require that 2 separate and distinct copartnerships must be construed as a single employing unit, where they conducted separate businesses in physically separated premises, for which separate and distinct books of account were kept for each, separate bank accounts maintained and operated under separate franchises from different manufacturers and distributors, separate personnel employed, separate letterheads and separate billings used and separate Federal income tax returns filed, since there is no unity of enterprise (CL 1948, §§ 421.40, 421.41).

4. SAME—COMBINATION OF EXPERIENCE RECORDS OF EMPLOYERS.

The experience records of 2 or more employers may be combined, where a change in the legal entity or form of an employer has been effected by a change of ownership or in the composition of a partnership (CL 1948, § 421.22).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur, Partnership § 18.

[2-6] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 25-27.

[2-6] Validity, construction, and application of provisions of unemployment compensation acts as to employment units which are affiliated or under a common control.  142 ALR 918; 158 ALR 1237.

5. Same—Legal Entities of Employers—Contributions.

The employment security act recognizes that legal entities of employers are not to be disregarded unless it appears that there is no sound business reason for separation other than merely to avoid contributions under the act (CL 1948, § 421.-41).

6. Same—Successor Employers—Combined Experience Record—Separate Partnerships by Same Brothers.

Partnership of 2 brothers conducting automobile sales agency under franchise from one manufacturer in physically separate premises with separate books of account and bank accounts from that of another partnership, conducted under another name, operating under franchise from another manufacturer for sale of tractors and implements and which prohibited its dealers from engaging in any other business constituted 2 separate and distinct employing units, hence, successor of automobile sales agency was entitled to more favorable contribution rate resulting from combined experience record with partnership succeeded (CL 1948, § 421.-40).

Appeal from Ingham; Salmon (Marvin J.), J. Submitted June 11, 1952. (Docket No. 64, Calendar No. 45,483.) Decided September 3, 1952.

Certiorari by Employment Security Commission to review order of the appeal board of the Employment Security Commission holding that Clyde C. Crane, Jr., doing business as Crane Motor Sales, succeeded to experience record to Ford Sales & Service. Judgment for defendant. Plaintiff appeals. Affirmed.

*Frank G. Millard*, Attorney General, *Edmund E. Shepherd*, Solicitor General, and *Francis W. Edwards*, Assistant Attorney General, for plaintiff.

*Warner, Norcross & Judd* (*Harold S. Sawyer*, of counsel), for defendant.

BOYLES, J.  The question presented here is whether 2 certain separate and distinct partnerships, although consisting of the same 2 individuals as copartners, are 1 and the same employing unit, and whether they should be combined and held to be a single employing unit for the purpose of determining their experience record and contribution rate under the Michigan employment security act.*

On January 2, 1946, Sam T. and Rex Johnson became partners in a Ford sales and service agency in Reed City, which they operated under a franchise from the Ford Motor Company until July 15, 1949. In their certificate of copartnership filed with the county clerk, the partnership name was designated as Sam T. and Rex Johnson.

On May 1, 1948, these same 2 individuals became partners in a tractor and implement sales and service business under a certificate of copartnership in which the partnership name was designated as Johnson Tractor & Implement Sales. They operated this business until August 1, 1949, under a franchise from the Great Lakes Tractor & Equipment Company which prohibited its dealers from engaging in any other business.

The business of each of these 2 partnerships was directed and controlled by these same 2 individuals. However, each business was operated in physically separated premises, separate and distinct books of account were kept for each, they maintained separate bank accounts, operated under separate franchises from different manufacturers and distributors, employed separate personnel, used separate letterheads, separate billings, and filed separate Federal income tax returns.

---

* PA 1936 (Ex Sess), No 1, as amended (CL 1948, § 421.1 *et seq.*, as amended by PA 1951, No 251 [Stat Ann 1950 Rev and Stat Ann 1951 Cum Supp § 17.501 *et seq.*]).

The Ford agency became subject to the payment of contributions under the Michigan employment security act on January 1, 1946. At all times during its operation it employed a sufficient number of workers to remain subject thereto. Its account with the commission was carried under the name of Sam T. and Rex Johnson, a copartnership. The other copartnership, the tractor agency, at no time employed a sufficient number of workers to be separately subject to the contribution provisions of the act.

On October 18, 1948, the partners notified the commission that as of May 1, 1948, the date of its inception, the tractor and implement business became separate from Sam T. and Rex Johnson, under the name of Johnson Tractor & Implement Sales, asked for 2 blanks to make reports, and stated that they would include Johnson Tractor & Implement Sales contribution with Sam T. and Rex Johnson. They were advised by the commission that inasmuch as Sam T. and Rex Johnson were the owners of both business establishments, the employment of Johnson Tractor & Implement Sales should be included with the rest of their employment, and 1 combined quarterly contribution report submitted. The Johnsons accordingly thereafter submitted a single report for each of the calendar quarters in which they paid wages to the employees of both enterprises. Each report was filed under the name of Sam T. and Rex Johnson, a copartnership, and included the combined wages paid by both partnerships.

On July 15, 1949, Sam T. and Rex Johnson enjoyed a favorable contribution rate of 1% based upon their experience in respect to providing employment to those who rendered services for both enterprises. On that date the defendant and appellee herein, Clyde C. Crane, Jr., purchased the entire assets of the Ford agency, secured a new franchise from the Ford Motor Company and continued to operate that

agency under the name of Crane Motor Sales.  He continued to employ all of the personnel formerly employed by the Johnsons in the operation of the Ford agency.  The business and assets of the Ford agency constituted about 65% of the combined assets of the tractor and Ford agencies.

The Johnsons continued to operate the tractor agency as copartners until August 1, 1949.  On that date all of the assets of the tractor agency were transferred to Rex Johnson, who thereafter operated the agency as an individual proprietor.  Rex Johnson continued to employ all of the same individuals who had been employed by the Johnsons in the operation of this agency.  He acquired the entire organization, trade and business of the tractor agency, including all of its assets.

After these transactions were completed, the commission issued 2 administrative determinations respecting the status of Clyde C. Crane, Jr., doing business as Crane Motor Sales, and that of Rex Johnson.  The first determination held that Clyde C. Crane, Jr., became an "employer" on July 15, 1949, under the successorship provisions of the act.*  The other held that Rex Johnson became an employer on August 1, 1949, under the provisions of the same section of the act.  No appeal was taken from either determination.

On March 16, 1950, the commission issued a determination establishing the contribution rate of Crane Motor Sales for the years 1949 and 1950 at 3% effective July 15, 1949.  Crane Motor Sales protested this determination and appealed to the referee, who reversed it.  The appeal board affirmed the referee, and the Michigan employment security commission thereupon filed a petition for a writ of certiorari in the Ingham circuit court.  The circuit judge entered

* CL 1948, § 421.41(2) (Stat Ann 1950 Rev § 17.543[2]).  Not amended by PA 1951, No 251.

an order dismissing the writ and affirming the appeal board. The result was that Crane Motor Sales has a contribution rate of 1%, favorable to it as against the commission's determination of 3%. The commission appeals.

The gist of the appellant commission's claim is that the 2 partnerships, although separate and distinct in every respect except one, are only 1 employing unit under the employment security act. The 1 element in the circumstances of the present case on which appellant relies is that both partnerships have the same 2 individuals as copartners.

The weakness in appellant's position might appear from the question involved as stated by appellant:

"Where the *same individuals* employ workers in each of 2 businesses which they operate as separate enterprises under separate partnership agreements, is each business organization a separate and distinct employing unit under CL 1948, § 421.40 (Stat Ann 1950 Rev § 17.542)?" (Italics supplied.)

The obvious query is whether it is true that the *same individuals* employ the workers in both partnerships, one operating the Ford agency, and the other operating the Johnson Tractor & Implement Sales. Its franchise prohibited it from engaging in any other business—*e.g.,* selling Ford automobiles.

In this State a partnership is a distinct legal entity separate from the individuals composing it.

"Partnership is a legal entity separate from the individuals composing it, and its essential elements are their contribution to it of whatsoever nature, whether capital, consisting of money, merchandise, et cetera, or credit, skill or labor." *Thurston* v. *Detroit Asphalt & Paving Co.,* 226 Mich 505.

See, also, *Chisholm* v. *Chisholm Construction Co.,* 298 Mich 25; *Lobato* v. *Paulino,* 304 Mich 668.

(In the *Chisholm Case, supra,* the Court came to the conclusion that "in order to prevent an injustice or fraud, we do not hesitate to disregard the fictional entity of the partnership and regard the members as individuals." The rationale of the *Chisholm Case* is that an inactive copartner in the defendant construction company "cannot take advantage of his own wrong or neglect to create a waiver or estoppel in his own favor." No such claim is made in the instant case.)

The statutory definition of an employing unit in the employment security act is:

" 'Employing unit' means any individual or type of organization, including any partnership, * * * which has or * * * had in its employ 1 or more individuals performing services for it within this State. All individuals performing services within this State for any employing unit which maintains 2 or more separate establishments within this State shall be deemed to be employed by a single employing unit for all the purposes of this act." CL 1948, § 421.40 (Stat Ann 1950 Rev § 17.542).*

From the above, appellant argues that the 2 partnerships here involved are, in legal effect, only 1 partnership, because both are composed of the same individuals; hence only 1 employing unit. Appellant claims:

"Thus, when 2 or more copartnerships are composed of the same identical individuals, there is, in fact, and in law, but 1 copartnership, *which includes the entire business in which the 2 individuals have co-ownership and concerning which they are associated.*"

We agree with appellant that the question whether there is only 1 employing unit in this case is to be determined by the provisions of the employment

* Not amended by PA 1951, No 251.

security act. *Acme Messenger Service Co.* v. *Michigan Unemployment Compensation Commission,* 306 Mich 704; *O'Brian* v. *Michigan Unemployment Compensation Commission,* 309 Mich 18; *Graystone Ballroom, Inc.,* v. *Baggott,* 319 Mich 87; *Nordman* v. *Calhoun,* 332 Mich 460. However, we do not find in the employment security act itself any requirement that 2 separate and distinct copartnerships operating as in the case at bar must be construed as a single employing unit. Appellant's only basis for claiming such a conclusion must be found solely in the unity of the partners in both copartnerships. There is no such "unity of enterprise" here as to bring the instant case under *American Screw Products Co.* v. *Michigan Unemployment Compensation Commission,* 311 Mich 440 (159 ALR 1195). Here, the enterprises operated by the 2 partnerships were fully separate and apart, and conducted as such. Furthermore, the "unity of enterprise" basis announced in the *American Screw Products Case, supra,* would not afford any relief to the appellant here. The appellee would not suffer hardship under the unity of enterprise premise, any more than under the legal entity theory of partnerships.

The Michigan employment security act expressly recognizes that a partnership is an "employing unit" within the meaning of the act, without the exception claimed by appellant that separate and distinct partnerships, operating separate enterprises, should be considered as 1 employing unit when they are owned and conducted by the same individual partners. Section 40 of the act (CL 1948, § 421.40 [Stat Ann 1950 Rev § 17.542])* declares that an employing unit includes a partnership. Section 41(2) (CL 1948, § 421.41[2] [Stat Ann 1950 Rev § 17.543(2)])* declares that "employer" means any individual *legal*

---

* Not amended by PA 1951, No 251.

*entity, et cetera.* Section 22(2) (CL 1948, § 421.22
[2] [Stat Ann 1950 Rev § 17.524(2)])* declares that
the experience records of 2 or more employers may
be combined where a change in the *legal entity* or
form of an employer has been effected by a change
of ownership or in the composition of *a partnership.*
It might be argued that section 41(3) (CL 1948,
§ 421.41[3] [Stat Ann 1950 Rev § 17.543(3)])* of the
act should be applied to the circumstances of this .
case to support appellant's conclusion that here there
is only 1 "employer," hence only 1 employing unit.
This section provides that:

" 'Employer' means :    *    *    *
"(3) Any employing unit    *    *    *    which, together
with 1 or more other employing units engaged in the
same or an associated line of business, is owned or
controlled (by a legally enforceable means or other-
wise) directly or indirectly by the same interests, or
which owns or controls 1 or more other employing
units engaged in the same or an associated line of
business, and which, if treated as a single unit with
such other employing units or interests, or both,
would be an employer under paragraph (1) of this
section : Provided, That this subsection shall not ap-
ply in cases where it can be shown that there is a
sound business reason, other than avoidance of con-
tributions, for the separation of such employing
units."

In the instant case, the two Johnsons had a sound
business reason for the complete separation of the
Johnson Tractor & Implement Sales partnership
from the operation of the Ford agency partnership.
The Johnson Tractor & Implement Sales agency
operated under a franchise from its supplier pro-
hibiting it from engaging in any other business.
Section 41, *supra,* recognizes that legal entities are

---

* Not amended by PA 1951, No 251.

not to be disregarded unless it appears that there is no sound business reason for separation other than merely to avoid contributions under the act. The reason for the separation here has not been challenged.

Appellant relies on *Canada Dry Bottling Co. of Utah* v. *Utah Board of Review,* — Utah — (223 P2d 586, 22 ALR2d 664). But in that case the Utah supreme court had under consideration only 1 partnership. The Utah supreme court construed this question in a situation where *the same partnership* operated simultaneously as separate enterprises 3 bowling alleys and a bottling works. It answered in the negative the contention that each business enterprise of this copartnership was a single employing unit separate and apart from the other. The situation before us is different. Here, we have 2 separate and distinct partnerships, not a single partnership operating separate enterprises.

We are not in accord with appellant's claim that under the circumstances of this case the 2 partnerships constitute a single employing unit under the employment security act. Each was a separate and distinct employing unit. Other incidental questions raised but not discussed in appellant's brief need not be referred to.

Affirmed. Costs to appellee.

Dethmers, Butzel, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.

The late Chief Justice North did not sit.