# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF TALENT AND ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

UNPUBLISHED
April 28, 2016

        Plaintiff-Appellee,

v

No. 325333
Kent Circuit Court
LC No. 14-002703-AE

R2M, LLC,

        Defendant-Appellant.

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Defendant R2M, LLC appeals by leave granted the trial court's September 3, 2014 order reversing the decision of the Michigan Compensation Appellate Commission (MCAC), which excised a portion of the experience account transferred to R2M as a successor employer. For the reasons set forth in this opinion, we affirm.

## I. FACTS

The facts in this case are undisputed. Spectrum Lanes II, LLC was formed in 2000 for the purpose of operating a bowling facility in Wyoming, Michigan. Spectrum Lanes was owned by six owners, including Ronald Eaton. Several years later, in 2007, a bank approached the owners of Spectrum Lanes about taking over a facility in Dorr, Michigan, because the facility was having financial problems. After negotiating with the bank, Spectrum Lanes agreed to take over the facility and operate a second bowling center there. The six owners of Spectrum Lanes formed a second business, Wheaton Enterprises II, LLC, for the purpose of operating the second bowling facility. The two businesses essentially operated as distinct entities from approximately 2007 to 2009. However, Spectrum Lanes handled the payroll for both businesses. On a biweekly basis, Spectrum Lanes would bill Wheaton for its payroll, and Wheaton would write Spectrum Lanes a check in return. As a result, Wheaton's payroll history was reported to plaintiff the Unemployment Insurance Agency (UIA) as part of Spectrum Lanes' account. Wheaton, itself, was never registered as an employer with the UIA. During this time, the UIA was unaware that Wheaton's payroll was being reported by Spectrum Lanes.

In late 2009, Eaton, who had been acting as a "silent partner" for the businesses, became an active partner because Spectrum Lanes was facing financial difficulties and it eventually

-1-

declared bankruptcy. Around that time, the bowling facility operated by Wheaton went out of business. R2M was subsequently formed by Eaton and two other partners for the purpose of acquiring Spectrum Lanes. On January 1, 2011, R2M acquired all of Spectrum Lanes' assets, organization, trade, and business. The UIA thereafter issued a determination that R2M was a successor employer of Spectrum Lanes and was liable for its unpaid taxes and interest, as well as all or a pro rata share of its unemployment experience account. R2M protested the determination requesting that it be afforded the status of a new company with respect to its unemployment tax rates. The UIA issued a redetermination, affirming its prior determination. Eaton, on behalf of R2M, then requested a hearing in front of an administrative law judge (ALJ).

At the administrative hearing, R2M claimed for the first time that its transferred experience account should exclude the portion attributable to Wheaton because Wheaton was a separate entity from Spectrum Lanes. The ALJ agreed with R2M and concluded that Wheaton must be excluded from the experience account. The UIA appealed the decision to the MCAC, which affirmed the ALJ's ruling. The UIA then appealed to the trial court, which reversed the ALJ and the MCAC's rulings and remanded for reinstatement of the UIA's redetermination of successorship liability. The trial court found that the ALJ and the MCAC "went beyond the issues properly before them" by considering whether to excise the experience account because the issue before them was solely one of successorship liability. This appeal ensued.

## II. ANALYSIS

Upon review of a decision by an ALJ and the MCAC, a trial court "must affirm [the decision] if it conforms to the law, and if competent, material, and substantial evidence supports it." *Hodge v US Security Assoc, Inc*, 497 Mich 189, 193; 859 NW2d 683 (2015); see also MCL 421.38. The trial court "is not at liberty to substitute its own judgment for a decision of the MCAC that is supported with substantial evidence." *Id.* at 193-194. This Court, upon review of the trial court's decision, must "determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings." *Id.* at 194 (quotation and citation omitted).

R2M argues that the trial court erred by finding that the ALJ and the MCAC went beyond the scope of their authority in considering whether to excise the experience account. However, irrespective of whether the ALJ and the MCAC had authority to address and decide that question under MCL 421.33,[1] the trial court properly concluded that transferring only part of the experience account to R2M as a successor employer to Spectrum Lanes was contrary to the plain language of MCL 421.22(c)(1). MCL 421.22(c)(1) provides:

> In the case of a transfer of business . . . , the commission shall assign the transferor's experience account, or a pro rata part of the account, to the transferee. The commission shall make the assignment as of the date on which the business is

---

[1] See e.g. *Gleason v Mich Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.")

transferred or as of June 30 of the year in which the business was transferred, whichever date is earlier. The pro rata part of the transferor's experience account to be assigned to the transferee shall be determined on the basis of the percentage relationship to the nearest ½ of 1% that the insured payroll for the 4 completed calendar quarters immediately before the date of transfer properly allocable to the transferred portion of business bears to the insured payroll for the same period allocable to the entire business of the transferor immediately before the date of the transfer. [MCL 421.22(c)(1).]

Accordingly, the share of the experience account transferred to a successor employer depends on the percentage of business transferred. See *Baxter Decorating & Painting Co v Mich Employment Security Comm*, 24 Mich App 380, 389; 191 NW2d 91 (1971). Here, R2M admitted that it acquired 100-percent of Spectrum Lanes. Thus, pursuant to MCL 421.22(c)(1), the UIA properly transferred the entirety of Spectrum Lanes' experience account. The statute does not contain a provision permitting a business to be excised after the experience account has been transferred. Therefore, the trial court applied the correct legal principles in finding that excising the transferred experience account was contrary to law. See *Hodges*, 497 Mich at 193-194.

R2M's reliance on *Michigan Employment Security Comm v Crane*, 334 Mich 411; 54 NW2d 616 (1952), in support of its argument to the contrary is misplaced. *Crane* is factually dissimilar from the instant case and concerned a different question of law. Notably, in *Crane*, the partnerships were mistakenly advised by the Michigan Employment Security Commission to combine their payroll reports whereas Spectrum Lanes and Wheaton did so intentionally without informing the UIA.

In sum, because it was contrary to law for the ALJ and the MCAC to excise a portion of the transferred experience account when R2M admitted acquiring 100-percent of Spectrum Lanes' business, MCL 421.22(c)(1), the trial court properly reversed that decision and remanded for a reinstatement of the UIA's redetermination of successor liability.

Affirmed. No costs awarded. MCR 7.219(A).

/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola