O'BRIAN v. MICHIGAN UNEMPLOYMENT COMPENSATION
COMMISSION.

1. Unemployment Compensation—Roofing and Siding Applicators
—Test of Employment—Statutes.

In determining whether or not plaintiff who has been assessed
for contributions under the unemployment compensation act
was an employer of persons who applied roofing and siding,
the test of employment applied is that furnished by the un-
employment compensation act rather than one supplied by
common-law principles (Act No. 1, § 42, subds. [1] [6], Pub.
Acts 1936 [Ex. Sess.], as last amended by Act No. 18, Pub. Acts
1942 [2d Ex. Sess.]).

2. Same—Test of Employment.

Under the unemployment compensation act where service is per-
formed for remuneration, there is an employment unless it
is shown that the individual performing the service is free
from control or direction over the performance of the service
both under the contract and in fact, that the service is either
outside the usual course of business for which the service is
performed· or is performed outside of all the places of busi-
ness of the enterprise for which performed and that the in-
dividual is customarily engaged in an independently estab-
lished trade, occupation, profession or business (Act No. 1,
§ 42, subd. 6 [a, b, c], Pub. Acts 1936 [Ex. Sess.], as
amended by Act No. 18, Pub. Acts 1942 [2d Ex. Sess.]).

3. Same—Construction of Statutes.

The unemployment compensation act should be liberally con-
strued to accomplish its purpose (Act No. 1, Pub. Acts 1936
[Ex. Sess.], as amended).

4. Same—Great Weight of Evidence—Roofing and Siding Ap·
plicators—Inspection.

On certiorari in suit to determine liability for contributions
under the unemployment compensation act, holding of circuit
judge that parties who contracted with plaintiff to apply

roofing and siding materials were his employees was not against the great weight of the evidence where it appears applicators were not free from control by plaintiff, contracts with property owner were with plaintiff who was liable to the former for defective workmanship or material, contributions for some 77 individuals as applicators were involved, so-called master contract with schedule of payments did not create any contractual relation between plaintiff and applicators, work sheets embodying data as to a particular job were not always executed as a formal contract, tools and equipment were sometimes loaned applicators and work was inspected by plaintiff's inspectors, notwithstanding it also appeared that in so-called master contract applicators were designated as contractors and they were given the right to employ and control men used on the jobs and contractors carried on other jobs at same time they worked for plaintiff (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended).

Appeal from Ingham; Carr (Leland W.), J. Submitted April 12, 1944. (Docket No. 23, Calendar No. 42,632.) Decided May 17, 1944.

Petition by George N. O'Brian, doing business as Mineralite Products Company, for writ of certiorari to review order of Michigan Unemployment Compensation Commission determining liability of plaintiff for contributions. Order affirmed in part and reversed in part. Plaintiff appeals. Defendant cross-appeals. Affirmed.

*Cummins & Cummins,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Frank Day Smith, Florence Clement Booth, Daniel J. O'Hara,* and *Victor H. Meier,* Assistants Attorney General, for defendant.

North, C. J. In April, 1942, plaintiff filed an application for determination of his liability for contributions or assessments under the Michigan unem-

ployment compensation act. Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended.* Upon being advised that he was liable for contributions he appealed to a referee, and from the decision of the referee to the appeal board. Thereafter from a decision adverse to plaintiff an appeal in the nature of certiorari was taken to the circuit court of Ingham county. The final determination held plaintiff liable for contributions in so far as certain men designated as "applicators" were engaged in rendering services in the performance of specific contracts incident to plaintiff's business. From the decision of the circuit court this appeal in the nature of certiorari has been taken by plaintiff.

Plaintiff is doing business in the city of Lansing as Mineralite Products Company, and he designates himself as "a merchandiser and jobber of composition roofing and siding materials." In connection with his business plaintiff enters into contracts for furnishing the material and labor for roofing or siding buildings. Such contracts in some instances are obtained with the property owners by solicitors whose relations to the transactions are not involved in this appeal, and in some instances such initial contracts are obtained by the parties who apply the roofing or siding. When such contracts are presented to plaintiff, they are accepted by him if found satisfactory. For brevity we herein refer to George N. O'Brian as plaintiff; to the men who undertake to perform the labor in applying the roofing or siding as application contractors or subcontractors; and to the persons whom such subcontractors employ to perform labor as employees.

---

* This act had been amended prior to April, 1942, by Act No. 347, Pub. Acts 1937, Act No. 324, Pub. Acts 1939, Act No. 364, Pub. Acts 1941, and Act No. 18, Pub. Acts 1942 (2d Ex. Sess.). It has since been amended by Act No. 246, Pub. Acts 1943 (see Comp. Laws Supp. 1940, 1943, §§ 8485-41 et seq., Stat. Ann. 1943 Cum. Supp. § 17.501 et seq.).—REPORTER.

From time to time as the contracts for the performance of such jobs are available through plaintiff's office any one of numerous so-called application contractors, men who are carpenters or skilled in construction and roofing business, enter into agreements with plaintiff to perform the necessary labor in applying the roofing or siding on designated jobs. Such relationship is established with plaintiff by means of two instruments, one of which is referred to as the master contract and the other as a separate job sheet. The former is a continuing agreement without any fixed period of duration. It sets forth the terms, including the "price per square" of footage at which the work will be done, and establishes the relation which, without reference to any particular job, would generally be applicable between plaintiff and the "applicator." The job sheet embodies the details of the particular job to be performed. The plan results in plaintiff furnishing the material with which the job is to be done at his price per square or lineal foot, while the application contractor performs the service of applying the roofing or siding at a price agreed upon between him and plaintiff.

Aside from infrequent instances the application contractor in doing the work uses his own tools and ladders. He may perform the actual labor in person or engage employees to do the work. He is not under the control of plaintiff as to whom he will employ or at what rate of pay or as to hours of labor or the time or manner in which the work will be done except that the completed job is to be done in a good and workmanlike manner in accord with the contract for the particular job. Except as he receives pay under the terms of his agreement as performed, the application contractor receives no compensation for services from plaintiff; and the

application contractor bears his own loss, if any, or benefits from the profits, if any, derived from a particular job. In exceptional circumstances plaintiff has paid wages to the application contractor's employees; but such is not the rule and, when done, the amount so paid is charged against what would otherwise be due the application contractor on the particular job. The question for determination is whether under such circumstances the application contractors are to be considered as plaintiff's employees and plaintiff required on that basis to make contributions to the unemployment compensation fund under the Michigan act, or whether on the other hand the applicators are independent contractors, as claimed by plaintiff.

Decision must be made in the light of the Michigan unemployment compensation act, which furnishes its own test, rather than by common-law principles which normally determine the distinction between an employee and an independent contractor. *Acme Messenger Service Co.* v. *Unemployment Compensation Commission,* 306 Mich. 704. As to what constitutes "employment" within the act the following provisions control:

"(1) Subject to the other provisions of this section 'employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied. * * *

"(6) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

"(a) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(b) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(c) Such individual is customarily engaged in an independently established trade, occupation, profession or business." (Act No. 1, § 42, subd. (1), (6), Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 324, Pub. Acts 1939, and Act No. 18, Pub. Acts 1942 (2d Ex. Sess.) (Comp. Laws Supp. 1940, § 8485-82, Stat. Ann. 1942 Cum. Supp. § 17.545).

Subdivision 7 of section 42 enumerates various exceptions to the above-quoted subdivision 6 of section 42, but such exceptions in no way affect decision in the instant case. Nor is decision herein affected by the fact that subdivision 6 above quoted was omitted from section 42 as amended by Act No. 246, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8485-82, Stat. Ann. 1943 Cum. Supp. § 17.545).

In a former case we have held that paragraphs (a), (b), (c), above quoted, which limit the preceding words of subdivision 6 of section 42, are to be construed conjunctively. *Acme Messenger Service Co.* v. *Unemployment Compensation Commission, supra,* 710. We have also held that the unemployment compensation act should be liberally construed in accomplishing its purpose. *Godsol* v. *Unemployment Compensation Commission,* 302 Mich. 652 (142 A. L. R. 910).

The so-called master contract or "agreement" is of such length that we refrain from quoting it in full. It contains in the paragraphs indicated the following provisions:

"First: Contractor agrees that he will accept any job for applying, laying and/or repairing roofs, siding and general repair work on buildings within the

State of Michigan, which may be tendered to him by the company (plaintiff), and that he will apply, lay and/or repair the roofs, siding or do general repair work on those jobs which he accepts in a neat, workman like manner, and in accordance with the instructions furnished to him by the company.

"Second: Contractor agrees that he will not do any extra work on said jobs not specified in such instructions above mentioned without express written authority from the company. * * *

"Fifth: Contractor guarantees that all roofs or siding applied, laid and/or repaired or general work performed by him under and by virtue of this contract shall be free and clear from any defect in workmanship for a reasonable length of time. * * * Contractor agrees to remedy said defects without delay and without cost to the company. * * *

"Sixth: Contractor agrees to indemnify, protect and hold the company free and harmless from any and all claims, and demands whatsoever, and all suits in law or in equity, and any and all expenses (including court costs and attorney fees) incurred by the company in and about defending against and settling such claims. * * *

"Seventh: Contractor shall employ and discharge at his own expense and have complete control and supervision over all men used in or about any of said jobs.* * *

"Ninth: Company agrees to pay contractor, and contractor agrees to accept from the company as full payment for work done by the contractor on any job tendered by the company to the contractor and accepted by the contractor hereunder * * * compensation in accordance with schedule marked exhibit 'A', signed by the parties hereto and attached to this contract and hereby made a part hereof."

Other provisions in the so-called master contract are that the contractor upon the completion of a job will return to the company all ladders, scaffolding

and other equipment loaned to him; that he will deliver to plaintiff waivers of lien signed by the contractor and "each laborer employed by him," and a statement signed by the property owner that the job has been done in a manner satisfactory to him; that materials delivered to the job but not used thereon will be returned to plaintiff's place of business; and that the contractor will pay all charges of any kind for unemployment insurance or old age pension for men employed by him on jobs taken from plaintiff.

Because of the character of the record on this appeal we should note in part the statutory provisions governing such appeals to the circuit court and from the circuit court to the Supreme Court.

"*Review of questions of fact and law by court.* The findings of fact made by the appeal board acting within its powers if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive, but the circuit court of the county, in which the claimant resides or in which the employer's principal place of business in Michigan is located, if no claimant is a party to the case, or the circuit court for the county of Ingham shall have power to review questions of fact and law on the record made before the referee and the appeal board involved in any such final decision, but said court may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence: Provided, That application is made within 15 days after delivery of a copy of such decision, by certiorari or by any other method permissible under the rules and practices of the circuit courts of this State, and to make such further orders in respect thereto as justice may require. The commission shall be deemed to be a party to any judicial action involving any such decision. An appeal may be had from the decision of said circuit court in the same

manner as provided by the laws of this State with respect to appeals from circuit courts." Act No. 1, § 38, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 364, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 8485–78, Stat. Ann. 1943 Cum. Supp. § 17.540).

Our review of the record discloses phases of the relation between plaintiff and the applicators which tend to sustain plaintiff's contention that these applicators are in fact and in law independent contractors; but on the other hand much in the record supports defendant's contention that the applicators under the provisions of the controlling statute are employees of the plaintiff. Decision of this controlling question must be made from an over-all consideration of the record. We deem it unnecessary to attempt to review every detail of the record but note the following.

As tending to establish the relation of an independent contractor rather than that of an employee plaintiff notes and urges the following.

(a) The applicator renders services under an agreement in which he is designated as a "contractor." While worthy of consideration, this circumstance is not conclusive, and particularly so since the statute above quoted provides that the one rendering the service is an employee "until it is shown to the satisfaction of the commission" that such person is free from control or direction "both under his contract of service *and in fact.*"

(b) The so-called master contract provides: "Contractor shall employ and discharge at his own expense and have complete control and supervision over all men used in or about any of said jobs." Admittedly the quoted provision is indicative of full control and of an independent contractor status, but its persuasiveness must be viewed in the light of other portions of the record. It appears by plaintiff's own testimony that the applicators were paid

by plaintiff for work done "at the end of each week, according to footage." Further, that in some instances plaintiff paid wages direct to the men who assisted the applicators, and that plaintiff kept book accounts in which entry of payments to applicators was under the heading "labor."

(c)  The testimony discloses that the applicators fixed the amount of the compensation to be paid to their helpers, and this, plaintiff urges, is in keeping with his claim that the applicators were independent contractors. However it may be noted as a matter of common knowledge that men employed as foremen frequently have the power to "hire and fire" employees and to fix the compensation for which they will work; but such authority on the part of the foremen does not render him an independent contractor. And so in the instant case the circumstance just noted is not conclusive.

(d)  Another circumstance urged in support of plaintiff's contention is that the application contractors carried on other jobs during the same period they were performing services for plaintiff. Here again the circumstance noted tends to sustain plaintiff's claim; but it must be considered in the light of the fact that the ordinary employee may and often does render services to parties other than his employer and during the period of his employment. This, however, does not change his status of an employee to that of a contractor.

In support of defendant's contention that the applicators are employees of plaintiff rather than independent contractors, the following among other phases of the record are stressed.

(a)  It plainly appears from the record that the contract with the property owner for the roofing or siding is between the owner and the plaintiff. The job is plaintiff's job, and he merely employs the services of the applicators in performing the con-

tract. If either the material used or the workmanship proves defective the property owner would look to plaintiff for correction; but in this connection the record shows that the cost of correcting defective workmanship is charged back by plaintiff against the applicator, as would be done in the case of a subcontractor.

(b) The testimony discloses that there is great uncertainty both in plaintiff's mind and in his records as to who rendered services for him as alleged contractors and who were persons otherwise employed to assist in the work. The decision rendered by the appeal board states: ''The employment status of the services of 77 individuals designated as 'application contractors' * * * is up before us for consideration.'' To say the least, this is seemingly a large number of persons to be considered ''independent contractors'' rather than employees.

(c) The so-called master contract (including the attached schedule) solely in and of itself did not create any contractual relation between plaintiff and the applicators. This is true because this instrument does not identify any work or job to be done. By itself it created no obligation on the part of plaintiff or the subscribing applicator. If any legally enforceable contract relation arose, it was only brought into being by the so-called ''work sheet,'' which embodied data pertinent to a particular job.

(d) The record discloses that the ''work sheet'' memorandum was sometimes signed by the applicator who took the job, but in other instances seemingly it was not executed at all as a formal contract. And the record fails to show whether such work sheets were or were not signed by plaintiff.

(e) Further, the so-called master contract provides: ''Company agrees to loan contractor,

wherever company shall have available, any necessary ladders, scaffolding and other equipment required by contractor in and about * * * jobs undertaken by contractor hereunder;" but it is further provided in the master contract that the contractor "assumes any and all liability arising or growing out of the use thereof," and further (as hereinbefore noted), the loaning of such tools or equipment by plaintiff to an applicator occurred rather infrequently. Furnishing tools to a workman is more commonly indicative of his status as an employee, rather than an independent contractor.

(f) It also appears from plaintiff's own testimony that he employed one or more inspectors who check on the jobs being done. Plaintiff testified: "I have one man in my employ who makes the rounds, goes around and just looks at the job. * * * We cannot tell a man (an applicator) what to do, if he is staying within the frame of the contract. If a man is not staying within the frame of the contract, we can break the contract with him."

The trial judge, in holding that the applicators were plaintiff's employees, seemingly relied much on the provision for inspection just above quoted and the provision in the first paragraph of the master agreement hereinbefore quoted wherein the contractor "agrees that he will accept any job * * * which may be tendered to him by the company" and that he will do the work "in a neat, workmanlike manner, *and in accordance with the instructions furnished to him by the company.*" Plaintiff contends that the word "instructions" above quoted should be held to mean *specifications* as contained in the so-called work sheet. But the circuit judge did not so construe this provision in the agreement, nor does it so read. And it cannot be overlooked that this provision goes to the very heart of the

instant case, because if plaintiff has the right to give "instructions" to the applicator, the latter is not free from control. Herein lies the distinction between the instant case and our decision in *McCormick* v. *Sears, Roebuck & Co.,* 254 Mich. 221. Concerning the phrase "and in accordance with the instructions furnished to him by the company" the circuit judge said:

"It seems to me that the language quoted is especially significant with reference to the matter of supervision and control. It will be noted that the contract does not undertake to limit the instructions as to character, detail, or time of furnishing. Doubtless the parties in making such agreement have in mind that the job to be performed is, after all, plaintiff's undertaking with the owner and that in consequence responsibility for proper performance rests with plaintiff. It is, I believe, a fair interpretation of the language used that the parties contemplated that instructions with reference to the doing of the work might be given in advance, or from time to time as the work progresses, or. a combination of such methods. The right to give such instructions logically involves the incidental rights of inspection. The duty to follow instructions given at plaintiff's election indicates that the actual control and direction of the work rests with him. The fact that he employs in the carrying out of his contracts men of experience who do not require specific directions does not change the rights and duties of the parties as created by their agreement, nor does it alter the status of those engaged in the performance of the work. * * *

"I am brought to the conclusion that the holding of the appeal board with reference to the status of the so-called application contractors is not repugnant to the great weight of the evidence."

The above determination is controlling of the status of the other men who worked with the applicators

in applying the roofing and siding. The following portion of the act is pertinent to this phase of the case.

"Each individual employed to perform or to assist in performing the work of any agent or employee of an employing unit shall be deemed to be employed by such employing unit for all the purposes of this act, whether such individual was hired or paid directly by such employing unit or by such agent or employee, provided the employing unit had actual or constructive knowledge of the work." Act No. 1, § 40, Pub. Acts 1936 (Ex. Sess.) (Comp. Laws Supp. 1940, § 8485-80, Stat. Ann. 1943 Cum. Supp. § 17.542).

The conclusion that all men engaged in applying plaintiff's roofing and siding materials were his employees obviates need for comment concerning plaintiff's contention that the Michigan unemployment compensation act would be unconstitutional, if construed to require him to make contributions on the basis of men who were rendering service but were not plaintiff's employees.

From the record as a whole the circuit judge found that the applicator in performing services for plaintiff did not "continue to be free from control or direction over the performance of such services" as provided in the statute, and therefore plaintiff was not exempt from liability for contributions under the Michigan unemployment compensation act. On this appeal by certiorari under the statutory provisions it cannot be said that the circuit judge's determination was "contrary to the great weight of the evidence." The judgment entered in the circuit court is affirmed. Costs to appellee.

STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.