HYSLOP v KLEIN

Docket No. 77-3689. Submitted June 19, 1978, at Lansing.—Decided
    August 8, 1978.

Harold Klein owned a small number of farms and was engaged in
    the dairy and beef cattle business. He made an oral contract
    with Howard R. Hyslop by which Hyslop agreed to handle the
    farming in return for a rent-free residence in the farmhouse
    and 30% of the gross receipts from the sale of milk and a 30%
    interest in all livestock. The daily operation of the farm was
    left almost entirely to Hyslop's discretion. Klein provided all
    tools and machinery and had arranged for the marketing of
    milk. No cattle could be sold without Klein's approval. On
    November 16, 1971, Howard Hyslop lost the vision in one eye
    when he suffered an eye injury while helping Klein repair a
    broken grain elevator. The eye was removed November 13,
    1972. On July 19, 1974, Howard Hyslop filed a petition for
    workmen's compensation benefits for the loss of the eye. The
    referee awarded benefits, limited by the "two-year-back" rule.
    The Workmen's Compensation Appeal Board reversed the
    award. Petitioner appeals, raising two issues: (1) was the pe-
    titioner an employee of the owner? and (2) did the referee err in
    applying the two-year-back rule to limit the petitioner's award?
    *Held:*

    1. The petitioner was an employee of the farm owner and
    was not an independent contractor. As an employee the pe-
    titioner was entitled to benefits.

    2. The two-year-back rule was correctly applied to limit the
    award since the petitioner had complete loss of vision from the
    date of the injury and the petitioner did not apply for benefits
    until more than two years later.

    Reversed, and the referee's award reinstated.

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation § 633.
[2–4] 81 Am Jur 2d, Workmen's Compensation §§ 152, 154.
    82 Am Jur 2d, Workmen's Compensation § 547.
[5–7] 81 Am Jur 2d, Workmen's Compensation §§ 168–170.
[8] 82 Am Jur 2d, Workmen's Compensation §§ 445, 450.

1.  WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL
    BOARD—APPEAL AND ERROR—FINDINGS OF FACT—EVIDENCE.

    Evidentiary findings of the Workmen's Compensation Appeal
    Board are conclusive if supported by competent, material and
    substantial evidence in the record.

2.  WORKMEN'S COMPENSATION—EMPLOYEE—WORKER'S DISABILITY COM-
    PENSATION ACT—ECONOMIC REALITY TEST—STATUTES.

    The proper guide for determining whether one is an employee
    under the Worker's Disability Compensation Act is the test of
    economic reality; it looks at the task performed, whether or not
    it is part of a larger common task, a contribution to the
    accomplishment of a common objective, and at the workmen, to
    see whether or not their work can be characterized as part of
    the integrated unit of production and whether the work done,
    in its essence, follows the usual path of an employee (MCL
    418.161[1][b]; MSA 17.237[161][1][b]).

3.  WORKMEN'S COMPENSATION—WORKER'S DISABILITY COMPENSATION
    ACT—ECONOMIC REALITY TEST—EMPLOYEE.

    The economic reality test for determining whether one is an
    employee under the Worker's Disability Compensation Act
    focuses the Court's analysis on two basic queries: (1) is the work
    performed a regular part of the normal operations of the
    business, and (2) is the worker's method of operation suffi-
    ciently distinct from the employer's business as to constitute a
    separate enterprise?

4.  WORKMEN'S COMPENSATION—ECONOMIC REALITY TEST—INTEGRAL
    PART OF ENTERPRISE—WORKER'S DISABILITY COMPENSATION ACT.

    A plaintiff's work constituted an integral part of a defendant's
    enterprise, under the economic reality test for determining
    whether one is an employee for purposes of the Worker's
    Disability Compensation Act, where the defendant's business
    was selling beef cattle and milk and the plaintiff's work was
    the daily operation of that business.

5.  WORKMEN'S COMPENSATION—EMPLOYEES—INDEPENDENT CONTRAC-
    TORS—FACTORS.

    Seven factors to be considered in analyzing whether a plaintiff is
    an employee or an independent contractor in a workmen's
    compensation case are: (1) whether plaintiff's work was of a
    nature customarily performed by an independent contractor, (2)
    whether plaintiff had held himself out to the public as one
    ready and able to perform specific tasks, (3) whether the
    plaintiff furnished his own equipment and/or materials, (4)

what liability the defendant would have incurred if he had terminated the relationship without cause, (5) whether the plaintiff depended for his living expenses primarily upon the emolument received from the defendant, (6) whether the method of payment indicated an employment relationship or an independent contract, and (7) whether the defendant exercised significant control over the plaintiff's work.

6. WORKMEN'S COMPENSATION—INDEPENDENT CONTRACTORS—EM-PLOYEES—CONVINCING ACCUMULATION OF FACTORS—SEPARATE BUSINESS ENTERPRISE.

The establishment of an independent contract relationship rather than an employee-employer relationship in a workmen's compensation case usually requires a convincing accumulation of factors indicating that the services were rendered in the course of the worker's pursuit of his separate business enterprise of selling those services.

7. WORKMEN'S COMPENSATION—INDEPENDENT CONTRACTORS—EM-PLOYEES—SIGNIFICANT CONTROL.

The correct test for analyzing whether a defendant exercised significant control over a plaintiff's work in a workmen's compensation case is not the actual exercise of control but the *right* to control, when determining whether an independent contract relationship or an employee-employer relationship existed between the plaintiff and the defendant.

8. WORKMEN'S COMPENSATION—TWO-YEAR-BACK RULE—LIMITING AWARD—DELAY IN APPLYING FOR BENEFITS—STATUTES.

A workmen's compensation referee properly limited a plaintiff's award for the loss of an eye by application of the "two-year-back" rule where the plaintiff's unequivocal testimony was that he had complete loss of vision from the date of the injury but the plaintiff did not apply for scheduled benefits until over two years had elapsed (MCL 418.381[2]; MSA 17.237[381][2]).

*The Cox Law Firm, P. C.*, for plaintiff.

*Foster, Swift, Collins & Coey, P. C.* (by *David C. Coey* and *Michael S. Brenton*), for defendant.

Before: R. B. BURNS, P. J., and D. F. WALSH and M. E. Clements,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

D. F. Walsh, J. Plaintiff appeals from a decision of the Workmen's Compensation Appeal Board reversing the referee's award of compensation.

Plaintiff's claim derived from an eye injury received on November 16, 1971, while he was helping the defendant repair a broken grain elevator.[1] The eye was removed on November 13, 1972. Plaintiff filed a petition for specific loss on July 19, 1974, and the referee awarded benefits, limited by the "two-year-back" rule of MCL 418.381 (2); MSA 17.237(381)(2). The Workmen's Compensation Appeal Board reversed the award and plaintiff appeals, raising two issues for our consideration:

(1) Was the plaintiff an "employee" within the meaning of MCL 418.161(1)(b); MSA 17.237(161)(1)(b)?

(2) Did the referee err in applying the two-year-back rule of MCL 418.381(2); MSA 17.237(381)(2) to limit plaintiff's award?

I

We premise our analysis upon the evidentiary findings of the Workmen's Compensation Appeal Board which are conclusive if supported by competent, material and substantial evidence in the record. *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243; 262 NW2d 629 (1978). Our inquiry is limited to determining whether those evidential facts established the pertinent jural relationship of employer/employee. *Askew v Macomber,* 398 Mich 212; 247 NW2d 288 (1976). See *Deziel v Difco Laboratories, Inc,* 394 Mich 466; 232 NW2d 146 (1975).

The proper guide for determining whether one is

---

[1] There is no claim that the injury did not arise "out of and in the course of" plaintiff's employment. MCL 418.301(1); MSA 17.237(301)(1).

an employee under the Worker's Disability Compensation Act[2] is the dissenting opinion of Justice SMITH in *Powell v Employment Security Comm*, 345 Mich 455; 75 NW2d 874 (1956). *Tata v Muskovitz*, 354 Mich 695; 94 NW2d 71 (1959), *McKissic v Bodine*, 42 Mich App 203; 201 NW2d 333 (1972). In *Powell*, Justice SMITH vigorously criticized the "control test" and rejected it in favor of an analysis focusing on the relationship of the worker and his work to the employer's business operation.

"The test employed is one of economic reality. It looks at the task performed, whether or not it is part of a larger common task, 'a contribution to the accomplishment of a common objective' * * * [and] at the workmen, to see whether or not their work can be characterized 'as part of the integrated unit of production' * * * and whether 'the work done, in its essence, follows the usual path of an employee'." Powell v *Employment Security Comm, supra,* at 478–479. (Citations omitted.)

The purpose of the "economic reality test" is to more closely conform the definition of "employee" to the objective of the Worker's Disability Compensation Act, *Powell, supra,* which is to allocate the human costs of production to the consumer of the product. *Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783 (1970). It serves that function by focusing our analysis on two basic queries: (1) Is the work performed a regular part of the normal operations of the business, and (2) Is the worker's method of operation sufficiently distinct from the employer's business as to constitute a separate enterprise? A number of cases have promulgated several factors to be considered in determining

---

[2] The act defines an employee, *inter alia,* as follows:

"Every person in the service of another, under any contract of hire, express or implied." MCL 418.161(1)(b); MSA 17.237(161)(1)(b).

employee status under the act, *e.g., Askew v˙ Macomber, supra, Schulte v American Box Board Co,* 358 Mich 21; 99 NW2d 367 (1969), *McKissic v Bodine, supra,* but all of those factors concern one or both of the above inquiries.[3] Mindful of the purpose of the "economic reality test" and guided by the decisions of our appellate courts concerning its application, we turn to the facts of the instant case.

Defendant owned a small number of farms and was engaged in the dairy and beef cattle business. He made an oral contract with the plaintiff by which the latter agreed to farm the land, milk the dairy stock and care for the beef cattle. In return plaintiff received rent-free residence in the farmhouse, 30% of the gross receipts from the sale of the milk, and a 30% interest in all livestock existing at or born after the time of the agreement.[4]

In the daily operation of the farm, plaintiff's manner of performance was left almost entirely to his discretion. Defendant provided all tools and machinery and also had arranged for the marketing of the milk. No cattle could be sold without his approval.

We first consider whether plaintiff's work contributed toward the accomplishment of the defend-

[3] We are not suggesting any "ultimate test" of economic reality such as was disapproved in *Askew v Macomber,* 398 Mich 212, 220; 247 NW2d 288 (1976). We are attempting merely to establish a rational framework within which to consider and weigh the various factors in a manner consistent with the directive of *Powell v Employment Security Comm,* 345 Mich 455; 75 NW2d 874 (1956).

[4] As indicated above, we premise our discussion on the evidential facts found by the board. However, we reject the board's characterization of the method of payment a "sharing in the profits". There are no findings in the board's decision indicating that plaintiff's remuneration was dependent upon the profit made by the business. The findings recited in the text indicate that payment would be made regardless of any profit.

ant's business objectives so as to constitute an integral part of the business operation. *Askew, supra, McKissic, supra.* Defendant's business was selling beef cattle and milk; plaintiff's work was the daily operation of that business. There is no doubt that plaintiff's work constituted an integral part of defendant's enterprise.

Defendant argues, however, that the arrangement under which plaintiff undertook to work for him was not an employment relationship but rather a contractual "business arrangement". Since it is apparent that the plaintiff was working for the defendant, the critical question is whether he was doing so as an employee or as an independent contractor.[5]

" 'An independent contractor is one who, carrying on

[5] The board's characterization of the relationship as having "elements of partnership and joint venture", by which we are not bound, *Deziel v Difco Laboratories, Inc,* 394 Mich 466; 232 NW2d 146 (1975), is simply not apt on the instant facts.

"The definition of employment status almost always takes the form of distinguishing an employee from an independent contractor. The reason is simple. If one wants to get something done without doing it oneself, there are really only two ways open: to hire an employee to do it, or to contract out the work to an independent entrepreneur. The employee-independent contractor distinction is not an artificial dichotomy, invented by legal minds interested in fine distinctions for their own sake. It is a fundamental fact of business life." 1A Larson, Workmen's Compensation, § 43.20, p 8-3.

*See Scott v Alsar Co,* 336 Mich 532; 58 NW2d 910 (1953). The very first operative fact found by the board provides the factual framework for our statement of the critical question:

"Defendant owned a rather large farm and some dairy cattle, but he no longer wished to farm and cultivate this himself."

Furthermore, the board's emphasis on facts indicating the plaintiff's independence and the lack of supervision by the defendant illustrates the centrality of the employee/independent contractor distinction to its analysis of the case. Finally, the board apparently recognized the impossibility of finding a partnership or joint venture on the instant facts since it made no attempt to do so other than the perfunctory observation noted above.

Thus, the dispositive question on this issue is whether the plaintiff worked for the defendant as an independent contractor.

an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results.' " *Stratton v Maine,* 336 Mich 163, 167; 57 NW2d 480 (1953), *Kendrick v Graddis,* 75 Mich App 383, 386, n 1; 255 NW2d 14 (1977).[6] (Citations omitted.)

The circumstances mentioned in *Stratton, supra,* closely correspond to the remaining factors suggested for consideration by *Askew, supra, Schulte, supra,* and *McKissic, supra:*

(1) Whether plaintiff's work was of a nature customarily performed by an independent contractor?

(2) Whether plaintiff had held himself out to the public as one ready and able to perform specific tasks?

(3) Whether the plaintiff furnished his own equipment and/or materials?

(4) What liability the defendant would have incurred if he had terminated the relationship without cause?

(5) Whether the plaintiff depended for his living expenses primarily upon the emolument received from the defendant?

---

[6] Implementation of the employee/independent contractor distinction is not inconsistent with Justice SMITH's opinion in *Powell, supra.* Rather his critique was directed at exclusive reliance on the "control test" to make that distinction.

(6) Whether the method of payment indicated an employment relationship or an independent contract?

(7) Whether the defendant exercised significant "control" over the plaintiff's work?

Although one or more of the answers to the above inquiries may tend to show independent contract relationship, its establishment usually requires a convincing accumulation of factors indicating that the services were rendered in the course of the worker's pursuit of his separate business enterprise of selling those services. 1A Larson, Workmen's Compensation (hereinafter Larson), § 44.31, p 8-36; see *Stratton v Maine, supra, O'Brian v Michigan Unemployment Compensation Comm*, 309 Mich 18; 14 NW2d 560 (1944), *Begovac v Northwestern Cooperage & Lumber Co*, 264 Mich 508; 250 NW 292 (1933). We now apply these principles to the facts before us.

Nothing in the record indicates whether plaintiff's work was of a type customarily performed by independent contractors or whether plaintiff held himself out to the public as one ready and willing to perform specific farming tasks. The only pertinent finding of the board in this regard is that the plaintiff was sought out by the defendant by referral when the latter was in need of someone to operate his farm. Furthermore, the operation of the farm was a full-time job for the plaintiff.

An employment relationship is strongly indicated where the worker does not hold himself out to the public as performing an independent business service and regularly devotes all his time to a particular employer. 1A Larson, § 45.31(a), p 8-109; see *Stratton, supra.*

Also indicative of an employment relationship is the fact that defendant provided the tools, machin-

ery and everything else necessary for the operation of the business. *Stratton, supra, O'Brian, supra.*[7]

Another factor tending to establish plaintiff's status as an employee is that the defendant would have incurred no liability for breach of contract if he had terminated the relationship without cause. Insofar as the unjustified termination of an independent contract would give rise to damages, *e.g., Hitchcock v The Supreme Tent of the Knights of the Maccabees of the World,* 100 Mich 40; 58 NW 640 (1894), the freedom to terminate employment without liability is inconsistent with the notion of an independent contractual relationship. 1A Larson, § 44.35, p 8-68. See *Askew, supra, Powell, supra.*

There is no dispute that the plaintiff's sole sources of maintenance during the relationship was the emolument received from the defendant. Such dependence further evidences plaintiff's employee status. *Powell, supra.*

From the method of payment we can draw no conclusion. Although payment was not on a "completed project" basis—which would indicate an independent contract, neither was it on a "time" basis—which would indicate an employment relationship. The method of payment in the instant case was consistent with either characterization.[8]

The final consideration is the degree of defend-

---

[7] The rationale underlying consideration of this factor is twofold: First, an independent contractor normally furnishes his own tools. Second, where the owner of the business provides substantial equipment or machinery, his interest in protecting his investment and in ensuring its productivity raises a fair inference of his right to control its operation. *See* text at p 154, *infra.*

[8] To the extent that the method of payment indicates continuing service it shows employment; to the extent that it lessens the employer's interest in the details of the worker's industriousness, it tends to negate employment. 1A Larson, § 44.33(b), p 8-48.

ant's control over plaintiff's duties. The board's decision made much of the absence of any instances in which plaintiff was "bossed" by the defendant. Be that as it may, the correct test is not the actual exercise of control but the *right* to control. *Powell, supra, Stratton, supra, O'Brian, supra, Kendrick, supra.*

"[T]he test is, and must be, based on the right [to control], not the exercise. Most often the distinction is of importance when a skilled or experienced workman appears to be doing his job without supervision or interference. By an 'exercise' test, he would seem to be uncontrolled; yet it will often be found that the employer, in any showdown, would have the ultimate right to dictate the method of work if there were occasion to do so." 1A Larson, § 44.10, pp 8-19, 8-23, 8-24.

Thus, our inquiry is whether the defendant possessed the ultimate *right* to dictate specific directions to the plaintiff regarding his duties.

Direct evidence of the exercise of that right would be highly probative of its existence, although not necessarily conclusive. However, since the board found no facts substantiating any exercise of supervision,[9] defendant's right to control, if

---

[9] As evidence of plaintiff's independence from defendant's control, the board pointed to the great amount of discretion afforded plaintiff in the discharge of his duties and to the plaintiff's hiring of a temporary employee to operate the farm during plaintiff's convalescence. These facts are neither necessarily inconsistent with defendant's right to control nor are they particularly convincing in view of the other factors we have considered.

" 'The fact that one * * * exercises judgment as to the work done free of detailed direction by his employer does not make him an independent contractor.' " *Powell, supra,* at 464. (Citations omitted.)

"The testimony discloses that the applicators fixed the amount of the compensation to be paid to their helpers, and this, plaintiff urges, is in keeping with his claim that the applicators were independent contractors. However it may be noted as a matter of common knowledge that men employed as foremen frequently have the power to 'hire and fire' employees and to fix the compensation for which they will work; but such authority on the part of the foreman does not

he had such a right, must be inferred from other factors indicating that the defendant could have imposed his will in matters concerning plaintiff's operation of the farm. See 1A Larson, § 44.10, p 8-19.

One such factor is the defendant's right to terminate the relationship at will without incurring contractual damages for breach. As a general proposition, such a right to fire implies the power to control. In the instant case this power was magnified by the inclusion of rent-free residence as part of plaintiff's remuneration. Consequently, to the plaintiff termination would have meant not only seeking other employment but also moving his family. The defendant's right under the arrangement to exercise the power of dismissal at will is strong evidence of his right to exercise the lesser power of supervision.

In the context of the defendant's right to fire, his reserved powers of "inspection" and the "right to advise" assume greater importance. Advice implies the existence of alternative courses of action concerning which a decision is to be made. Given a situation in which plaintiff and defendant disagreed on a matter affecting the business concerning which defendant exercised his "right to advise", and given defendant's right to fire plaintiff, there is little doubt that the defendant "would have the ultimate right to dictate the method of work".

That conclusion is consistent with the other circumstances of the arrangement. Defendant owned the business, cattle, house, land and machinery. He made the marketing arrangements for

render him an independent contractor. And so in the instant case the circumstance just noted is not conclusive." *O'Brian v Michigan Unemployment Compensation Comm,* 309 Mich 18, 27; 14 NW2d 560 (1944).

the dairy operation and personally decided which cattle were to be sold. He also had the right to fire plaintiff without cause. These facts compel us to rule that the defendant did have the right (albeit largely unexercised) to dictate the plaintiff's duties and method of operation.

Our analysis of the foregoing factors convinces us that the plaintiff was engaged in work that constituted a regular and integral part of the normal operation of the defendant's business and that the plaintiff's rendition of those services was not pursuant to the operation of a separate enterprise of selling those services as an independent contractor. We, therefore, hold that plaintiff was defendant's employee within the meaning of the Worker's Disability Compensation Act.

## II

Plaintiff contests the applicability of the "two-year-back" rule to his award. The pertinent statutory provision is as follows:

"Whenever weekly payments are due an injured employee under this act, such payments shall not be made for any period of time earlier than 2 years immediately preceding the date on which the employee filed application for hearing with the bureau." MCL 418.381(2); MSA 17.237(381)(2).

Starting from the premise that the claim for loss of an eye accrued when the loss occurred and not necessarily on the date of the injury, *Allen v Kalamazoo Paraffine Co*, 312 Mich 575; 20 NW2d 731 (1945), *Henderson v Consumers Power Co*, 301 Mich 564; 4 NW2d 10 (1942), plaintiff would have us determine that the loss of his eye occurred at

the time that medical experts abandoned hope of permanent restoration.[10]

We decline to do so. Plaintiff's unequivocal testimony was that he had complete loss of vision from the date of the injury, November 16, 1971. He did not apply for scheduled benefits[11] until July 19, 1974. The referee did not err in limiting plaintiff's award by applying the "two-year-back" rule.

The decision of the Workmen's Compensation Appeal Board is reversed, and plaintiff shall receive the award granted by the referee.

---

[10] Plaintiff's eye was replaced by a prosthesis on November 13, 1972. He contends that it was on that date that he lost his eye. Although literally correct, his argument overlooks the fact that the compensation is for loss of vision.

[11] MCL 418.361(1)(l); MSA 17.237(361)(1)(l).